UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO M. RODRIGUEZ,<br><br>    Plaintiff<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 5:16-cv-00322-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Plaintiff Sergio M. Rodriguez appeals from the Commissioner's denial of Social Security Disability Benefits ("DIB"). Plaintiff alleges disability since September 1, 2011, based on symptoms stemming from a cervical fusion with residual chronic pain, fibromyalgia, and depression. [Dkt. 16 ("Pltf.'s Mem.") at 1 (citing Dkt. 15, Administrative Record ("AR") 156).][1] An Administrative Law Judge ("ALJ") held a hearing on August 4, 2014, and, by written decision dated October 15, 2014, found Plaintiff not disabled. [AR 17-31.] Plaintiff appealed to

---

[1] Plaintiff's Memorandum incorrectly states that Plaintiff alleged disability since November 30, 2011, but cites to the proper page in the Administrative Record that shows the September 1, 2011, alleged onset date.

the District Court, and both parties consented to proceed before the undersigned Magistrate Judge. [Dkt. 10, 11.]

Plaintiff presents three issues for review: (1) whether the ALJ properly assessed and gave little weight to Plaintiff's treating physicians' opinions; (2) whether the ALJ had at least one clear and convincing reason supported by substantial evidence for finding Plaintiff's subjective complaints to be less than fully credible; and (3) in a "catch all" category of "whether the ALJ made other errors," whether substantial evidence supports the ALJ's finding at step two of the five-step inquiry[2] that Plaintiff's alleged impairment of anxiety amounted to a legally severe impairment, and whether the ALJ's error, if any, was harmless. [Pltf.'s Mem. at 2, 6, 9.]

In order to avoid repetition and for additional reasons, the Court addresses these issues in a different order than did the parties. For the reasons set forth below, the Court AFFIRMS the decision of the ALJ.

## GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a

---

[2] To decide if a claimant is entitled to DIB, an ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

Even if Plaintiff shows that the ALJ committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)). "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination[.]'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

## BACKROUND FACTS

Plaintiff claimed the following medically determinable impairments: status post anterior cervical discectomy and fusion; cervical musculoligamentous strain; degenerative disc disease of the cervical and the lumbar spine; lumbar myofascial strain; fibromyalgia; and anxiety. [AR 22.] At step two, the ALJ found all of these impairments except Plaintiff's anxiety to be severe, because "they are more than slight abnormalities, and they have more than a minimal effect on the claimant's ability to do basic physical or mental work activities." [*Id.*] With respect to Plaintiff's anxiety, the ALJ did a thorough review of the medical evidence related to this disorder (several pages under the step two heading [AR 22-24]), considered the "paragraph B" criteria, and determined that Plaintiff's anxiety, considered singly and in combination with other impairments, does "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities" and thus was not severe. [*Id.*]

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, except as follows:

> [H]e can lift or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours of an eight-hour workday; he can sit for six hours out of an eight-hour workday. He can perform postural activities on an occasional basis, but he cannot climb ladders, ropes or scaffolds. He must avoid hazardous machinery, unprotected heights and driving. He cannot perform tasks that require above-the-shoulder work or the ability to look directly down, but he can perform table or bench work in front of the body.

[AR 25.]

In determining Plaintiff's RFC, the ALJ summarized the medical evidence of record and opinions of Drs. Vicente Bernabe, who performed a consultative orthopedic exam, Hannah Habash, who treated Plaintiff in connection with a worker's compensation claim, and Thawat Eosakul, an additional treating physician. [AR 27-28.] The ALJ also considered the opinions of two state agency medical consultants, who are experts in the administration Social Security disability programs. [AR 28, citing opinions of reviewing physicians Drs. Taylor-Holmes and D. McQuirk.] Relevant portions of the ALJ's analysis and the physicians' opinions will be discussed where applicable below.

Based on the above RFC, a vocational expert testified that there were sufficient light exertional level jobs available in the national economy that Plaintiff could perform. [AR 66-69.]

## DISCUSSION

### I. The ALJ's Determination That Plaintiff Was Not Fully Credible Is Supported By At Least One Clear And Convincing Reason.

"Where, as here, an ALJ concludes that a claimant is not malingering, and that []he has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of h[is] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028,

1036 (9th Cir. 2007)). Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina*, 674 F.3d at 1115 (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal citations and quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (explaining that acceptable bases for credibility determination include (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

Plaintiff claimed that he had headaches, dizziness, and disabling pain. More specifically, he testified that was severely limited in his ability to turn his head, and that he could not look down without getting vertigo. [AR 56]. He couldn't "see things that are directly below me" [AR 61], and also did not feel comfortable driving [AR 65]. Plaintiff alleged that he used a cane to walk, but had forgotten to bring it to the hearing. [AR 57]. He stated that he tripped a lot and had "close calls" but had not fallen. [AR 59-60]. When asked about his ability to stand, Plaintiff replied that he could do so for only "a few minutes," which he defined as "five, 10 minutes." [AR 65]. Plaintiff also testified that he was able to lift a gallon of milk,

but only with both hands. [AR 48]. Plaintiff filled out an adult function report that was consistent with his testimony. [AR 25, 188-196.]

The ALJ found Plaintiff's testimony less than fully credible. [AR 25.] The ALJ gave the following reasons for partially discounting Plaintiff's testimony:

- That some of Plaintiff's daily activities, such as washing dishes, putting clothes in the dryer, and driving a short distance to get his mail were limited, but also inconsistent with "the presence of an incapacitating or debilitating condition." [AR 26.]

- That the record showed that claimant's allegedly disabling impairments were present at approximately the same severity both prior to and after his alleged disability onset date. Plaintiff alleged that his impairments began after spinal surgery in 2009, yet he worked until, and alleged a disability date beginning in, 2011. During this time, he worked in a warehouse that sometimes required him to lift up to 100 pounds. [AR 26.]

- Plaintiff gave inconsistent reasons for why he stopped working. He testified that he took a buyout from his employer due to his worry he was going to be terminated because he was on workers' compensation, but also, separately, stated that he became unemployed when the company decided to replace union workers with non-union workers. [AR 26 (citing AR 446 (statements to Dr. Rathana Nakintara, a psychiatrist).]

- That claimant received unemployment past the date of his alleged disability onset date. [AR 26.] The ALJ noted that collecting unemployment was not dispositive, but it was inconsistent for Plaintiff to claim (as required for unemployment) that he was "physically and mentally able, willing, and available to work" while also contending that he had disabling limitations. [*Id.*]

6

- That Plaintiff's treatment for pain had been relatively conservative in nature – he was never sent to a specialist – and he missed several of the pain management classes to which he had been referred. These failures were unexplained. [AR 27.]

In his opening brief, Plaintiff attacks only the first of these reasons – that Plaintiff's activities of daily living are inconsistent with a finding of disability – as insufficient. [Pltf.'s Mem. at 8.] The several additional reasons set forth by the ALJ are not even mentioned by Plaintiff, other than where he condemns all of the ALJ's "reasons" – plural – as "specific enough" but not "convincing." [*Id.*][3] It is Plaintiff's brief that is neither specific nor convincing. The inconsistencies between (1) Plaintiff's alleged disabling condition and his work history; (2) the different reasons Plaintiff gave as to why he stopped working in 2011; and (3) the assertion, to obtain unemployment benefits, that he was able to work, on the one hand, and his contention before the ALJ that he was disabled, on the other, all provide specific and legitimate reasons for discounting his testimony. Plaintiff's unexplained failures to keep appointments and conservative treatment despite allegedly disabling symptoms also support the ALJ's decision. Given these several valid reasons that support the ALJ's ultimate determination that Plaintiff was less than credible, the Court need not address the one issue Plaintiff argues was improper.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for finding Plaintiff less than fully credible, and thus, there is no error warranting reversal and remand.[4]

---

[3] Plaintiff improperly addressed some of these issues for the first time in his reply brief. [Dkt. 24.] Although these arguments were waived because they were not presented in his opening brief, the Court nevertheless considered them and did not find them persuasive.

[4] The Court also notes that although the ALJ did not find Plaintiff fully credible, he nevertheless considered Plaintiff's subjective complaints in determining Plaintiff's RFC. For example, based primarily on Plaintiff's testimony, Plaintiff's RFC

## II. The ALJ Provided Specific And Legitimate Reasons For Rejecting Dr. Habash's And Dr. Eosakul's Conclusory Opinions That Plaintiff Is Disabled.

To reject the uncontradicted opinion of a treating physician, the ALJ must provide clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where a treating physician's opinion is contradicted by another doctor's opinion, an ALJ may reject the opinion if he provides "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31; *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citations and quotations omitted).

Plaintiff contends that the ALJ improperly rejected the opinions of two of Plaintiff's treating physicians, Drs. Habash and Eosakul, in favor of the opinions of Dr. Bernabe, a consultative physician, and two State agency medical consultants. [Pltf's Mem. at 2.] Given that the treating physicians' opinions were contradicted, the ALJ was required to, and as set forth herein did, provide specific and legitimate reasons for evaluating the various opinions as he did.

Dr. Habash treated Plaintiff in the context of a worker's compensation claim, and opined that Plaintiff should remain "off work." [AR 306, 381, 422] The ALJ properly noted that the Social Security standard for disability and the standard for evaluating whether a claimant should return to work for purposes of worker's compensation are different. Dr. Habash's opinion was rendered relative to whether Plaintiff could return to his then present work in a warehouse, which the ALJ *agreed* was not possible, instead fashioning a *light work* RFC for Plaintiff. [AR 28, 25].

---

restricts him from jobs that require him to look down or drive. [AR 25.]

To the extend Dr. Habash meant to opine that Plaintiff was incapable of *any* work (which is unclear), the ALJ also noted that Dr. Habash's opinion was not consistent with the "generally mild findings and conservative treatment" she and other physicians recorded. [AR 28.]

Dr. Eosakul opined that Plaintiff was "totally disabled and unable to work." [AR 254.] The ultimate conclusion of disability is for the ALJ (20 C.F.R. § 404.1527(e)), and, notably, neither Dr. Habash nor Dr. Eosakul discussed or recommended any particular limitations that would bear on Plaintiff's ability to perform work other than the heavy work he had been doing prior to his alleged onset date. The ALJ also correctly noted that Dr. Eosakul's opinion appeared to be based primarily, if not entirely, on Plaintiff's subjective complaints, because she did not cite to any objective medical findings or note specific limitations engendered by Plaintiff's several conditions. [AR 28.] Particularly given the Court's prior holding that the ALJ's credibility determination was properly supported, his discounting of treating physician opinions based almost entirely on Plaintiff's self-reporting is also valid.

In contrast, the clinical tests and notes of Dr. Bernabe and the thorough review of the two State agency consultants showed that while Plaintiff has some significant limitations, he is not completely unable to work. For example, Dr. Bernabe noted that Plaintiff was not in acute or chronic distress, that he moved freely without a cane or other assistive device, had a negative straight-leg raise test in both seated and supine positions, full range of motion in both the upper and lower extremities, 5/5 motor strength in in both the upper and lower extremities as well, and intact sensation and reflexes. [AR 442-44] And while Dr. Bernabe found limited range of motion in the lumbar and cervical spine, his inspection of the thoracic spine was unrevealing.[5] [442.] Dr. Bernabe's opinion after examining

---

[5] The ALJ crafted an RFC that was even more conservative than that which Dr.

Plaintiff is sufficient to meet the substantial evidence standard. [*See also* AR 72-83 (review opinion of Dr. Taylor-Holmes citing clinical notes and findings) and AR 85-97 (review opinion of Dr. McQuirk also citing clinical notes and findings).]

In light of the specific findings discussed above, as well as the record as a whole, the Court finds that the ALJ gave specific and legitimate reasons, supported by substantial evidence, to reject the conclusions of the two treating physicians that Plaintiff is disabled. This issue therefore does not warrant remand.

### III. The ALJ's Step Two Determination Was Proper And, Even If It Was Error, Any Such Error Was Harmless.

At step two of the sequential evaluation process, a plaintiff has the burden to present evidence of medical signs, symptoms, and laboratory findings that establish a medically determinable physical or mental impairment that is severe and can be expected to result in death or last for a continuous period of at least 12 months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); *see* 20 C.F.R. §§ 404.1520, 404.1509. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two when "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." *Ukolov*, 420 F.3d at 1004-05 (citing SSR 96-4p). An impairment may never be found on the basis of the claimant's subjective symptoms alone. *Id.* at 1005.

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe

---

Bernabe's opinion would support, in that Dr. Bernabe found that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and thus could perform medium work. The ALJ limited Plaintiff to light work with additional limitations.

impairment or combination of impairments. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of impairments is "not severe" if the evidence established only a slight abnormality that had "no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (internal citation omitted).

Even if an ALJ errs by finding one or more of a plaintiff's alleged impairments nonsevere, such error is harmless if he nevertheless considers the impairments when determining the plaintiff's RFC at step four. *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (failure to address particular impairment at step two harmless if ALJ fully evaluated claimant's medical condition in later steps of sequential evaluation process); *see also Stout,* 454 F.3d at 1055 (ALJ's error harmless when "inconsequential to the ultimate nondisability determination").

The ALJ determined at step two of the 5-step analysis that one of Plaintiff's diagnosable impairments, anxiety, was not severe. In a single paragraph under the heading "Whether The ALJ Made Other Errors Requiring Remand," Plaintiff challenges this finding, noting that there are consistent diagnoses of anxiety in the medical records. [Pltf's Mem. at 9]. Plaintiff fails, however, to point to any medical evidence demonstrating that Plaintiff's anxiety in any way limited his ability to function, mentally or physically, at work. Nor does he suggest any possible limitations. The ALJ, to the contrary, discussed the diagnosis and treatment notes related to Plaintiff's anxiety in great detail. [AR 22-24]. He thus not only found, based on substantial evidence, that Plaintiff's anxiety did not impact his ability to work sufficiently to warrant consideration as "severe," but nevertheless considered Plaintiff's symptoms in sufficient detail in crafting Plaintiff's RFC. As a result, any possible error was harmless.

Finally, under this same heading (and in the same paragraph), Plaintiff makes a two-sentence argument that the ALJ failed to consider Plaintiff's alleged vertigo in his decision. [Pltf's Mem. at 9]. This is factually incorrect. The ALJ not only considered Plaintiff's complaints of vertigo and "dizziness," he incorporated limitations specifically addressing these complaints in crafting Plaintiff's RFC. Notably, the ALJ added limitations to Plaintiff's RFC restricting him from performing any job where he was required to look down or drive, or where he would encounter unprotected heights or had to climb ladders, ropes, or scaffolds. So, again, any arguable error regarding failure to classify Plaintiff's vertigo as "severe" was harmless. Thus, remand is not warranted for this reason, either.

## CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS HEREBY ORDERED.**

DATED: October 31, 2016

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE